IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BHARATKUMAR CHAUDHARI, | : | CIVIL ACTION NO. 3:26-CV-242 |
| | : | |
| Petitioner | : | (Judge Neary) |
| | : | |
| v. | : | |
| | : | |
| MICHAEL T. ROSE, *et al.*,[1] | : | |
| | : | |
| Respondents | : | |

## MEMORANDUM

Bharatkumar Chaudhari, an immigration detainee in the custody of United States Immigration and Customs Enforcement, seeks a writ of habeas corpus because he is being detained without a bond hearing solely because he entered the United States without authorization years earlier. The court joins hundreds of other judges around the country in holding that this form of detention without a bond hearing is unlawful. The court will grant the petition for writ of habeas corpus and order the government to release Chaudhari.

## I.    Factual Background & Procedural History

Chaudhari entered the United States near Lukeville, Arizona on or around August 19, 2022. (Doc. 1 ¶ 2; Doc. 5 at 4). He was apprehended by United States Customs and Border Protection ("CBP") and detained for several days, at which point he was released on an order of release on recognizance. (Doc. 1 ¶ 2; Doc. 5 at

---

[1] Though the petition names several parties, the only true respondent should be Michael T. Rose, the warden of the facility having custody over Moreno. Rumsfeld v. Padilla, 542 U.S. 426, 434-35 (2004).

4-5). He was also given a Notice to Appear ("NTA") in immigration court, which charged him as removable from the United States. (Doc. 1 ¶ 2; Doc. 5 at 5). Chaudhari subsequently applied for asylum in the United States, asserting that he fears persecution in his native India. (Doc. 1 ¶ 3). His asylum application remains pending. (Id.).

On November 7, 2025, United States Immigration and Customs Enforcement ("ICE") arrested Chaudhari. (Doc. 1 ¶ 4; Doc. 5 at 5). Since his arrest, the Department of Homeland Security ("DHS"), the administrative agency overseeing ICE, has kept Chaudhari in immigration detention at Pike County Correctional Facility. He was denied a bond hearing pursuant to a DHS policy issued on July 8, 2025, which states that aliens who entered the United States without admission are subject to mandatory detention without a bond hearing in accordance with 8 U.S.C. § 1225(b)(2). (Doc. 1 ¶ 5; Doc. 5 at 5-6). This policy has since been applied by the United States Board of Immigration Appeals ("BIA"), the appellate body that hears appeals from decisions by Immigration Judges. See In re Yajure Hurtado, 29 I. & N. Dec. 2016, 2025 WL 2674169 (BIA Sept. 5, 2025).

Chaudhari filed this case on February 2, 2026, asserting that his detention violates United States immigration law because his detention is properly governed by 8 U.S.C. § 1226(a), which requires a bond hearing. (Doc. 1). Respondent responded to the petition on February 9, 2026, arguing that the detention is lawful under 8 U.S.C. § 1225(b)(2)(A). (Doc. 5). Chaudhari filed a reply brief on February 12, 2026, making the petition ripe for review. (Doc. 6).

## II.     Discussion

The government's detention of Chaudhari is based on an interpretation of Section 1225(b)(2) as giving it the authority to detain any aliens who entered the United States illegally without a bond hearing, regardless of how long they have been physically present in the United States. (See Doc. 5).

The court begins its analysis, as it must, with the text. Section 1225(b)(2) is titled "Inspection of applicants for admission." 8 U.S.C. § 1225(b). The statute includes two subsections: Section 1225(b)(1) applies to "[i]nspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled," while Section 1225(b)(2)—the subsection that the government has relied on in detaining petitioner—applies to "[i]nspection of other aliens." 8 U.S.C. §§ 1225(b)(1), 1225(b)(2). Section 1225(b)(2) states in relevant part:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2). Another provision of the statute, Section 1225(a)(1), provides that:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. § 1225(a)(1).

The government reads these provisions together to conclude that an immigrant who entered the United States without prior authorization is an "applicant for admission" and is therefore subject to detention without a bond hearing under Section 1225(b)(2). (Doc. 5). Chaudhari asserts that Section 1225(b) applies only to aliens apprehended at the border and those who have been here for a short time and therefore does not govern detention of aliens like him who have been in the country for several years.

Because both parties' readings are plausible on the face of the statute, the court has employed several canons of statutory interpretation to determine the best interpretation of the statute.[2] Based on these canons, the doctrine of *stare decisis*, and the major questions doctrine, the court concludes that Chaudhari's interpretation is the best reading of the statute.

First, the government's reading of Section 1225(b)(2) as allowing detention without a bond hearing for all immigrants who entered the United States without authorization runs afoul of the related canons of *noscitur a sociis* and *ejusdem generis*. The former is "a classical version, applied to textual explanation, of the observed phenomenon that birds of a feather flock together." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 195 (2012). The latter is a close cousin of *noscitur a sociis* recognizing that "a general or collective

---

[2] When faced with ambiguous statutory language, federal courts must determine the best reading of the statute and do not owe deference to the executive branch's interpretation of the statute. Loper Bright Enters. v. Raimondo, 603 U.S. 369, 412-13 (2024) (overruling Chevron, U.S.A., Inc. v. Nat. Resources Defense Council, Inc., 467 U.S. 837 (1984)).

term at the end of a list of specific items is typically controlled and defined by reference to the specific classes that precede it." Fischer v. United States, 603 U.S. 480, 487 (2024) (cleaned up).

Here, the first subsection of 8 U.S.C. § 1225(b), Section 1225(b)(1), is titled[3] "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled." 8 U.S.C. § 1225(b)(1). "[C]ertain other aliens who have not been admitted or paroled" is subsequently defined as "alien[s] who [have] not been admitted or paroled into the United States" and have not shown that they have "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this paragraph." 8 U.S.C. § 1225(b)(1)(A)(iii)(II). The second subsection of 8 U.S.C. § 1225(b), Section 1225(b)(2), follows this up with its title: "Inspection of other aliens." 8 U.S.C. § 1225(b)(2). In other words, Section 1225(b) applies to either "aliens arriving in the United States and certain other aliens" as defined in 1225(b)(1) or "other aliens" as covered by Section 1225(b)(2).

Applying the *noscitur a sociis* and *ejusdem generis* canons, the scope of 8 U.S.C. § 1225(b)(2)'s titular reference to inspection of "other aliens" is limited by the specific classes that precede it in 8 U.S.C. § 1225(b)(1): aliens "arriving in the United States" or aliens who have been present in the United States for less than two years. See Fischer, 603 U.S. at 487 (noting that *noscitur a sociis* and *ejusdem*

---

[3] "[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text." I.N.S. v. Nat'l Ctr. for Immigrants' Rts., Inc., 502 U.S. 183, 189 (1991).

*generis* "track the common sense intuition that Congress would not ordinarily introduce a general term that renders meaningless the specific text that accompanies it"). Thus Section 1225(b)(2) should be construed as referring to a narrower class of people than the class of aliens arriving in the United States or those who have been here for only a short time. The government's reading of the statute as applying to all immigrants present in the United States who entered the United States illegally is overly broad under the *noscitur a sociis* and *ejusdem generis* canons.

Second, the government's reading of the statute violates the whole text canon of statutory interpretation. Under the whole text canon, "[s]tatutes should be interpreted 'as a symmetrical and coherent regulatory scheme.'" Mellouli v. Lynch, 575 U.S. 798, 809 (2015) (quoting FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000)). "[I]nterpretation of a phrase of uncertain reach is not confined to a single sentence when the text of the whole statute gives instruction as to its meaning." Star Athletica, LLC v. Varsity Brands, Inc., 580 U.S. 405, 414 (2017) (quoting Maracich v. Spears, 570 U.S. 48, 65 (2013)). "[T]he meaning of a statute is to be looked for, not in any single section, but all the parts together and in their relation to the end in view." Scalia & Garner, supra, at 168 (quoting Panama Ref. Co. v. Ryan, 293 U.S. 388, 439 (1935) (Cardozo, J., dissenting)) (alteration in original).

The general structure of the Immigration and Nationality Act—the statute that codifies the relevant language of both Sections 1225 and 1226—was succinctly

6

explained in the Supreme Court's decision in <u>Jennings v. Rodriguez</u>, 583 U.S. 281 (2018). As the Court explained in <u>Jennings</u>, Section 1225 generally governs decisions made "at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible," while Section 1226 "generally governs the process of arresting and detaining" deportable aliens who are "present in the country" during their removal proceedings. <u>Id.</u> at 287-88. "In sum," the <u>Jennings</u> Court explained, "U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." <u>Id.</u> at 289. While the Supreme Court's particular treatment of these statutes may have been dicta in <u>Jennings</u>, it is revealing that the Court's description of the interplay between Sections 1225 and 1226 matches perfectly with Chaudhari's. And under this structure, Chaudhari's detention would be governed by Section 1226 rather than Section 1225 because he has been present in the United States for several years.

Third, the government's reading repeatedly flouts the anti-surplusage canon, which "counsels against adopting interpretations that render a statute 'superfluous, void, or insignificant.'" <u>United States v. Milchin</u>, 128 F.4th 199, 202 (3d Cir. 2025) (quoting <u>TRW Inc. v. Andrews</u>, 534 U.S. 19, 31 (2001)). "If possible, every word and every provision is to be given effect. . . . None should be ignored. None should

needlessly be given an interpretation that causes it to duplicate another provision or have no consequence." Scalia & Garner, supra, at 174.

In this case, the government's reading of the statute would render the detention provision of Section 1225(b)(1) a legal nullity. That provision, titled "Mandatory Detention," states that "[a]ny alien subject to the procedures under [Section 1225(b)(1)] shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). Under the government's reading of Section 1225(b)(2), however, the government would be required to detain all immigrants who previously entered the country illegally during the pendency of their removal proceedings. Thus, Section 1225(b)(1)(B)(iii)(IV) would have no legal effect and its requirement of a credible fear determination would be meaningless because Section 1225(b)(2) would require detention even if the immigrant were found to have a credible fear under Section 1225(b)(1)(B)(iii)(IV).

The government's reading of Section 1225(b)(2) would also make the statute's reference to "an alien seeking admission" surplusage. The statute states that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained." 8 U.S.C. § 1225(b)(2). But as other courts have noted, under the government's reading the words "seeking admission" could simply be deleted and the sentence would mean the same thing. See Villa Hernandez v. Kunes, No. 1:25-CV-1847, 2026 WL 411726, at *5 n.8 (M.D.

Pa. Feb. 13, 2026) (Wilson, J.) (citing <u>Bethancourt Soto v. Soto</u>, __ F. Supp. 3d __, No. 25-CV-16200, 2025 WL 2976572, at \*6 (D.N.J. Oct. 22, 2025)). The best reading of the statute is that "seeking admission" has independent effect by limiting the scope of the statute to people who are actively "seeking admission" to the United States. Thus, it does not apply to immigrants who have been present in the United States for years.

The government's reading would additionally render part of the Laken Riley Act, which Congress passed into law approximately one year ago, surplusage. The act amends the mandatory detention provision of 8 U.S.C. § 1226(c) by adding 1226(c)(1)(E), which requires immigrants to be detained if they (1) entered the country illegally and (2) committed certain violent crimes. Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3, 3 (2025) (codified at 8 U.S.C. § 1226(c)(1)(E)). Under the government's reading, however, this provision would be entirely unnecessary because such immigrants would already be subject to mandatory detention under Section 1225(b)(2) simply because they entered the country illegally. The court finds it implausible that the proper reading of the statute would render a statute passed by the current Congress superfluous.

The doctrine of *stare decisis* also cautions against the government's reading of Section 1225(b)(2) as giving it the power to detain any immigrants who entered the country illegally without a bond hearing. Every active district judge in the Middle District has rejected the government's reading of the statute and held that the

detention is governed by Section 1226(a) rather than Section 1225(b)(2).[4] The rulings in this district directly align with hundreds of decisions from other district courts around the country.[5]

In addition to the canons of statutory construction and the doctrine of *stare decisis*, the government's reading of the statute appears to run afoul of the Supreme Court's major questions doctrine. That doctrine recognizes that "in certain extraordinary cases," where an administrative agency asserts a "transformative expansion" of its authority on an area of "economic and political significance," "something more than a merely plausible textual basis for the agency action is necessary." West Virginia v. EPA, 597 U.S. 697, 721-23 (2022). "The agency instead must point to 'clear congressional authorization' for the power it claims." Id. at 723 (quoting Utility Air Regulatory Grp. v. EPA, 573 U.S. 302, 324 (2014)).

---

[4] See, e.g., Villa Hernandez, 2026 WL 411726, at *3-6 (Wilson, J.); Gonzalez Centeno v. Lowe, No. 3:25-CV-2518, 2026 WL 94642, at *3-4 (M.D. Pa. Jan. 13, 2026) (Munley, J.); Vadel v. Lowe, No. 3:25-CV-2452, 2025 WL 3772059, at *4-6 (M.D. Pa. Dec. 31, 2025) (Mehalchick, J.); Viantsko v. Lowe, No. 4:25-CV-02523, 2026 WL 313473, at *3-4 (M.D. Pa. Feb. 5, 2026) (Brann, C.J.); Patel v. O'Neil, No. 3:25-CV-2185, 2025 WL 3516865, *4-5 (M.D. Pa. Dec. 8, 2025) (Mariani, J.); Aparicio, v. Lowe, No. 3:25-CV-02413, 2026 WL 526702, at *7-8 (M.D. Pa. Feb. 25, 2026).

[5] See, e.g., Mirdjalilov v. Warden Fed. Detention Ctr. of Phila., No. 2:25-CV-7068, 2026 WL 184249, at *5 n.6 (E.D. Pa. Jan. 23, 2026) (collecting cases); Crespi Tacuri v. Genalo, No. 25-CV-06896, 2026 WL 35569, at *3 (E.D.N.Y. Jan. 6, 2026) (collecting cases); Rodriguez v. Bostock, 802 F. Supp. 3d 1297, 1304 n.3 (W.D. Wa. Sept. 30, 2025) (collecting cases). Although the only circuit court to have squarely addressed this issue has agreed with the government's position, see Buenrostro-Mendez v. Bondi, __ F.4th __, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026), this court is not bound by the decision and respectfully disagrees with it.

10

This is exactly the sort of extraordinary case that calls for the court to apply the major questions doctrine. The government asserts that the statute gives it the power to detain, without bond, every immigrant who entered the country illegally, no matter how long they have been physically present in the country or how far from the border they were apprehended. As Judge Douglas's extremely persuasive dissenting opinion in Buenrostro-Mendez v. Bondi notes, "for almost thirty years there was no sign anyone thought" the statute gave the government such authority, "and nothing in the congressional record or the history of the statute's enforcement suggests that it did." Buenrostro-Mendez, 2026 WL 323330, at *10 (Douglas, J., dissenting). The government's failure to invoke this authority for such a long period after the statute was passed is "telling" that the authority likely was not delegated in the statute. West Virginia, 597 U.S. at 722 (quoting Nat'l Federation of Independent Business v. Dep't of Labor, 595 U.S. 109, 119 (2022)). The passage of the Laken Riley Act in 2025—which, as noted above, amends Section 1226(c) to mandate detention for immigrants who entered the country unlawfully and subsequently committed a violent crime—also suggests that Congress had not previously delegated the authority for the agency to conduct detention without a bond hearing pursuant to Section 1225(b)(2).

The Supreme Court has stated that the major questions doctrine is properly invoked when "the Agency's interpretation would have given it permitting authority over millions of small sources [of air pollution], such as hotels and office buildings, that had never before been subject to such requirements." West Virginia, 597 U.S.

11

at 722 (citing Utility Air, 573 U.S. at 324). Similarly here, the government "asserts the authority and mandate to detain millions of noncitizens in the interior, some of them present here for decades, on the same terms as if they were apprehended at the border," despite this authority never having been recognized for the approximately thirty years since the relevant statutory language was enacted. Buenrostro, 2026 WL 323330, at *10 (Douglas, J., dissenting). If the authority to regulate millions of sources of air pollution is a major question that requires clear congressional authorization, the authority to detain millions of human beings without a bond hearing surely warrants the same treatment.

Under the major questions doctrine, the government has simply failed to show "clear congressional authorization" to exercise the expansive power it claims. West Virginia, 597 U.S. at 723. The court accordingly concludes that under the best reading of the statutory language, the clear trend of precedent in this district and around the country, and the major questions doctrine, petitioner is detained under 8 U.S.C. § 1226(a), rather than 8 U.S.C. § 1225(b)(2) as the government asserts.

Section 1226(a) requires the government to conduct a bond hearing to determine whether continued detention is lawful. Johnson v. Guzman Chavez, 594 U.S. 523, 527 (2021) (citing 8 U.S.C. § 1226(a)). Thus, under the clear language of the statute, the court's analysis would ordinarily end: the court would grant the petition and order an IJ to conduct a bond hearing. However, because the BIA has taken the position that IJ's do not have the authority to grant bond to immigrants who entered the country unlawfully, see Yajure Hurtado, 2025 WL 2674169, at *4,

12

and IJ's are obligated to follow that decision, this would appear to be a toothless remedy. Thus, rather than ordering the government to conduct a bond hearing, the court will order Chaudhari's release from detention and enjoin the government from detaining him under Section 1225(b)(2) in the future.

### III.   Conclusion

It is true, that at its core, the court finds a person can be an "applicant for admission" while also not be "seeking admission." This may strike some as odd but, "[i]n law as in life, . . . the same words, placed in different contexts sometimes mean different things." Yates v. U.S., 574 U.S. 528, 537 (2015) (plurality). Here, the Court rejects the government's incongruous interpretation of the text and reads Section 1225(b)(2) to only apply to aliens at the country's border.

Under this harmonious statutory scheme, the petition must be granted. A writ of habeas corpus will issue requiring the government to release petitioner and enjoining the government from detaining him under 8 U.S.C. § 1225(b)(2). An appropriate order shall issue.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:    February 26, 2026